**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-1684
_____

MICHAEL H. KIRSCH, D.D.S.,
BRADFORD S. JUNGELS, D.M.D.
Individually and on behalf of all others
similarly situated

v.

DELTA DENTAL OF NEW JERSEY

* Dr. Gary Krugman,
Appellant
*(Pursuant to Fed. R. App. P. 12(a))

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2-07-cv-00186)
District Judge: Honorable Stanley R. Chesler
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
December 20, 2012

Before:   McKEE, *Chief Judge*, SLOVITER, and VANASKIE, *Circuit Judges.*

(Filed: July 31, 2013 )
_____

OPINION
_____

VANASKIE, *Circuit Judge.*

Appellant Paul Krugman, a member of the Plaintiff-Appellee class of dental providers ("Class"), appeals the District Court's grant of a fee award of $575,000 to Class Counsel in connection with a class settlement. Because we find that the District Court did not abuse its discretion in granting the fee award, we will affirm.

I.

In November 2006, Dr. Michael H. Kirsch brought this action in New Jersey state court on behalf of himself and a putative class of all similarly situated dental providers. The defendant, Delta Dental of New Jersey ("DDNJ"), removed the action to federal court. The putative class consisted of dental providers who provided services to members covered by DDNJ plans. The Complaint alleged several unlawful practices, including failing to provide prompt payments of claims; "bundling" of claims, resulting in DDNJ's failure to pay for all procedures provided on the same date; "downcoding" of claims by changing payment codes; and failing to pay for ancillary services. The Complaint sought $5 million in damages and injunctive relief.

After three years of litigation, the parties engaged in mediation, which ultimately resulted in a settlement. The settlement did not include any monetary relief, but did include several "business reforms." As summarized in the Brief of Plaintiff Class-Appellees, these business reforms included:

> • Enhancing DDNJ's Benefits Connection website to enable providers to more efficiently query the status of pending and recently paid claims
>
> • Providing electronic Explanations of Benefits ("EOBs") to providers in lieu of paper EOBs

• Eliminating the requirement of submitting an EOB from a medical carrier under specified conditions in order to have claims processed more quickly

• Not adopting contractual provisions that in specified circumstances would prohibit dentists from collecting "up front" certain patient payments associated with primary coverage

• Providing detailed information on EOBs . . . relating to changed procedure codes . . .

• Eliminating the requirement . . . that dental providers in certain instances submit diagnostics for services included in a treatment plan for which DDNJ has already issued a predetermination reflecting an anticipated payment by DDNJ

• Agreeing that a dentist employed or retained by DDNJ will review designated procedures prior to any determination to change the associated procedure codes to codes with lesser approved fees

• [Adopting] [e]nforcement and compliance reporting mechanisms to ensure all settlement benefits are properly implemented and maintained.

(Appellees' Br. 9-10.)  In approving the settlement, the District Court found:

[T]he risks of obtaining a substantial monetary judgment in this case . . . were extremely problematic and . . . therefore, obtaining substantial business reforms in the form of injunctive relief, indeed is not only a reasonable settlement in this particular case, but the nature of the business reforms that were obtained by counsel for plaintiff in this negotiation appear to this Court to, indeed, be very substantial . . . .

(App. 1542.)

The settlement also provided that DDNJ would pay attorneys' fees of $575,000. Class Counsel sought judicial approval of the negotiated fee.  Krugman was the only class member to object.

3

Finding that the value of the settlement exceeded $1.6 million and that a percentage fee award of 33% is not unusual, the District Court approved the fee request of $575,000. In addition, using the lodestar method as a cross-check, the District Court observed that Class Counsel calculated its lodestar to be $1.1 million. The $575,000 fee, about half of the lodestar, was found to be reasonable. In fact, the District Court concluded that, based on the difficulty of the case and the resulting benefits to the class, the fee was "indeed a modest one." (*Id.* at 1554.) Krugman appealed.[1]

## II.

The District Court had jurisdiction under 28 U.S.C. §§ 1332 and 1441, and we have appellate jurisdiction under 28 U.S.C. § 1291. This Court reviews a District Court's award of attorneys' fees for abuse of discretion. *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 299 (3d Cir. 2005). An abuse of discretion may "occur if the judge fails to apply the proper legal standard or to follow proper procedures in making the determination, or bases an award upon findings of fact that are clearly erroneous." *Id.* (internal quotation marks omitted). "[A] thorough judicial review of fee applications is required for all class action settlements." *Id.* (internal quotation marks omitted). We have noted that "[t]he percentage of recovery method is generally favored in common fund cases," whereas courts typically use the lodestar method in fee-shifting cases. *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 280 (3d Cir. 2009) (internal quotation marks omitted).

## A.

---

[1] After Krugman filed his Notice of Appeal, the Class moved in the District Court

Krugman essentially argues that the attorneys' fee award was too high in light of the fact that the Class did not receive any monetary damages. Krugman asserts that the claims alleged in the Complaint totaled millions of dollars in damages, but, instead, the settlement agreement included only business reforms, which he characterizes as "irrelevant and marginal" because many of those reforms require DDNJ to continue current policies and procedures. (Appellant's Br. 12.)

Although the settlement resulted in no monetary award, the District Court employed the percentage of recovery as the primary method to review the fee application.[2] In *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190 (3d Cir. 2000), we articulated several factors that district courts should consider in analyzing fee awards in common fund cases where the fees come from the same source as a settlement award. *Id.* at 195 n.1.[3] We also noted that these *Gunter* factors "need not be applied in a formulaic

---

[2] We note that Krugman apparently misunderstands the District Court's review of Class Counsel's fee application. Krugman asserts that the District Court erred in "applying the percentage of recovery cross-check." (*Id.* at 17.) In actuality, as the District Court explained, it used the percentage of recovery as the primary method and used the lodestar as a cross-check. (*See* App. 1553 ("In common fund cases, what is typically done by the court [after using the percentage of recovery method] is to use the lodestar calculation as a cross check to see whether or not the fee award is appropriate.").)

[3] The relevant factors are:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of

5

way." *Id.* In this regard, we have upheld a district court's "abbreviated" analysis of the *Gunter* factors where the court had "addressed similar issues in its examination of the settlement's fairness under the *Girsh*[*v. Jepson*, 521 F.2d 153 (3d Cir. 1975),] factors," and in the fee analysis in related litigation. *Rite Aid*, 396 F.3d at 301. Here, although the District Court did not engage in an explicit analysis of the *Gunter* factors, its analysis of the fee award combined with its analysis of the *Girsh* factors at the same hearing "provides a sufficient basis for us to adequately review its award." *Id.* at 302.

Regarding the first and seventh factors, the District Court noted that a fee of one-third of the value of the settlement is typical in cases of this type. A fee of $575,000 in this case is roughly 36% of the District Court's conservative valuation of the business reforms at $1.6 million. The record supports the District Court's valuation finding. The certification of Bruce D. Silverman, senior vice president of DDNJ, states that the numerous business reforms would result in greater administrative efficiencies for the class members. Krugman did not challenge Silverman's certification. Therefore, as the Class notes, even if the approximately 160,000 class members saved only five dollars per year for the duration of the five-year settlement agreement as a result of these increased efficiencies, the settlement would have a value of $4 million.

In relation to the second *Gunter* factor, the District Court noted in its *Girsh* analysis that out of a class of roughly 160,000 members, only two members objected—

---

> time devoted to the case by plaintiffs' counsel; and (7) the
> awards in similar cases.

*Gunter*, 223 F.3d at 195 n.1.

6

one to the settlement and the other, Krugman, to the attorneys' fees. Touching upon the fourth and sixth *Gunter* factors, the District Court observed during its *Girsh* analysis that the three years of litigation had "been extraordinarily complex" and that the parties had "vigorously and aggressively litigated every single aspect of this case." (App. 1537.). While the District Court apparently did not address the skill and efficiency of the attorneys or the risk of nonpayment, nothing in the record indicates that these factors would weigh in favor of finding the fee award unreasonable. Based on the record as a whole, we conclude that the District Court did not abuse its discretion in approving the $575,000 fee award based on a percentage of recovery analysis.

B.

Krugman also challenges the thoroughness of the District Court's analysis of Class Counsel's lodestar. "When the lodestar method is used only as a cross-check, it is appropriate to apply an abridged analysis . . . ." *Ins. Brokerage*, 579 F.3d at 280. "The lodestar cross-check calculation need entail neither mathematical precision nor bean-counting. The district courts may rely on summaries submitted by the attorneys and need not review actual billing records." *Rite Aid*, 396 F.3d at 306-07 (footnote omitted).

At the hearing, Class Counsel represented that he and his firm billed 1900 hours, which included a discount of 500 hours based on his conclusion that those 500 hours "were not reasonably expended . . . ." (App. 1548.) Class Counsel's certification to the District Court confirms the 1900 hours at a blended billing rate of $585 per hour for a lodestar of roughly $1.1 million. Based on this information, the District Court acknowledged the $1.1 million lodestar and observed that the $575,000 fee was

7

"approximately half of that lodestar." (*Id.* at 1553.) Based on its analysis, the District Court ultimately concluded that the award was "more than a reasonable fee." (*Id.*) We perceive no error in relying on the lodestar information provided by Class Counsel. Accordingly, we find no abuse of discretion in the District Court's analysis of the lodestar as a cross-check for the fee award.

III.

For the foregoing reasons, we will affirm the judgment of the District Court.